UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SAJ GROUP, LLC,**

    Plaintiff,

v.                                                       Case No. 8:23-cv-02396-WFJ-AAS

**DAVIDOFF OF GENEVA USA INC, et al.,**

    Defendant.
_____/

## ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SAJ Group, LLC, sues Davidoff of Geneva USA Inc. ("Davidoff") for patent infringement. Dkt. 1. SAJ Group claims that Davidoff infringed two of its patents, Dkt. 1 at 8–9, which cover the design for a glass with integrated rests for the holding of tobacco products. Dkt. 50 at 10. Before the Court is Davidoff's motion for summary judgment. Dkt. 62. After considering the record, oral arguments, and the parties' briefs, Dkts. 77–78, the Court grants Davidoff's motion, Dkt. 62. The accused products do not infringe as a matter of law.

## BACKGROUND

Plaintiff SAJ Group holds two design patents. The first is U.S. design patent D819,884 (the '884 patent), which claims "[t]he ornamental design for a glass with integrated rests for tobacco products, as shown and described." Dkt. 35-1 at 2. The

1

second design patent, D846,184 (the '184 patent), uses the same claim language as the '884 patent but represents the base of the glass with a dotted line rather than a solid one, indicating that portion of the design is not claimed. Dkt. 35-2 at 2.

Commencing this action, Plaintiff SAJ Group sued Defendant Davidoff for infringement. Dkt 1. The products that Plaintiff accused are Defendant's Difference Glass ("Difference") and Winston Churchill Spirit Glass ("Spirit"). Dkt. 62 at 1, 4; Dkt. 72 at 4–5. Both accused products have "off centered notches." Dkt. 64 at 1.

The Court previously found that '184 patent's claim language means "[t]he ornamental design for a glass including inwardly tapered sidewalls; a rounded upper edge; and two rounded notches for the holding of tobacco products that are centrally located on the rim." Dkt. 50 at 10. The language has the same meaning for the '884 patent but adds "a rounded and stepped bottom." Dkt. 50 at 10. The Court also found that Defendant's off centered notches were a "different design," and that Plaintiff's centrally located notch was "an ornamental choice distinct from functionality, albeit a minimal one," in part because it may "impair functionality" by "decreas[ing] the length of time the rests can support a cigar." Dkt. 50 at 9–10.

Defendant now moves for summary judgment. Dkt. 62. Defendant argues that the accused products have no similarities to Defendant's products and therefore cannot infringe under the ordinary observer test. Dkt. 62 at 6–14. The Court agrees.

2

## LEGAL STANDARD

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The Court, in ruling on a motion for summary judgment need only consider "the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e), (c).

## ANALYSIS

Plaintiff claims Defendant infringed its design patents. Dkt. 1 at 8–9. Infringement is evaluated using the "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc) ("[I]n accordance with

*Gorham*, . . . we hold that . . . test should be the sole test for determining whether a design patent has been infringed." (citing *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871))). The dispositive question is whether "[i]n the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Gorham*, 81 U.S. at 528.

However, infringement will be found only if the accused product "embodies the patented design or any colorable limitation thereof." *Egyptian Goddess*, 543 F.3d at 678 (alteration in original) (internal quotation omitted) (quoting *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116–17 (Fed. Cir. 2007)). In some cases, "the claimed design and accused [product] will be sufficiently distinct that it will be clear" that "the two" are not "substantially the same." *Id.* (internal quotation omitted). In such cases, summary judgment is appropriate. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) ("Where the . . . [products] are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law.").

Plaintiff argues that an ordinary observer would see the notches in Defendant's glass and be deceived into thinking it was Plaintiff's design. Dkt. 72 at 10. In making this argument, Plaintiff contends that an ordinary observer would see the following:



Dkt. 72 at 9. Plaintiff provided another image comparing the Spirit glass to the '184 patented design. The only difference in the other image with the ''184 design is that it features a dotted line excluding the stepped bottom from the claimed design. Dkt. 72 at 10. Both images show the Defendant's Spirit glass in the foreground compared to a two-dimensional representation of Plaintiff's '884 patented design in the background. Plaintiff's chosen angle and size unrealistically aligns the notches, and the presentation comparing a three-dimensional object to a two-dimensional design obscures the plain dissimilarities between the glasses. An ordinary observer would not see the glasses arranged in the way that Plaintiff has arranged these two images.

In comparing the accused products to the designs as a whole, as the test requires, *Egyptian Goddess*, 543 F.3d at 680 (explaining that courts must be wary not focus "on each individual described feature . . . rather than on the design as a whole"), Defendant's figures are illustrative. These figures are shown below.

5





Dkt. 62 at 11–12. Defendant figures compare two-dimensional images taken from the front plane of the accused products to the same plane of the two-dimensional designs taken from the patents. The first figure compares the Spirit Glass to each patent. The second figure compares the Difference glass to each patent.

Focusing on the design of the glasses as a whole rather than the elements individually, the accused Spirit and Difference glasses are sufficiently distinct from the '884 and '184 patented designs. On a general conceptual level, the only similarities between the accused products and the patented designs are the same: both sets are glasses, and both feature a notch at the top. However, the similarities end there, and similarity at this level is insufficient "to demonstrate infringement of the claimed designs." *See Ethicon Endo-Surgery*, 796 F.3d at 1336.

As explained in the claim construction order, Dkt. 50, because each of these similarities have a functional aspect, they must be excluded from the scope of the design claims, *see Ethicon Endo-Surgery*, 796 F.3d at 1336. The functionality of the notch is to hold a cigar, although the central placement design choice is not purely functional and encompassed a "minimal" level of ornamental choice. Dkt. 50 at 9. Plaintiff admits that the functionality of a glass is to hold liquid. Dkt. 72 at 16. These functional aspects must be excluded from the scope of the design claims at a general conceptual level. *See Ethicon Endo-Surgery*, 796 F.3d at 1336.

Comparing the remaining ornamental features, after removing these functional elements from both the patented designs and the accused products, the dissimilarities are apparent. *See id.* at 1336–37. The Court agrees with the Defendant that the accused products have the overall appearance of antique, older-styled

7

glasses, Dkt. 62 at 10, distinguishable from that of the patented designs, which appear modern.

On the remaining features, the patented designs prominently feature "inwardly tapered sidewalls," Dkt. 50 at 10, setting them apart from the accused products' straight sidewalls, Dkt. 62 at 10. The '884 patented design features "a rounded and stepped bottom," Dkt. 50 at 10, whereas the Spirit glass features a distinct fluted bottom, and the Difference glass features a square bottom, Dkt. 62 at 10. The only similarity is that the patented designs feature a "rounded upper edge," Dkt. 50 at 10, which is present in the Difference glass. However, this ornamental feature is not as noticeable—evidenced in part by the fact that neither Party discussed it—and is rendered even less significant by the notch placement along the top edge. Perhaps the most discernable difference, the patented designs feature "two rounded notches . . . centrally located along the rim," Dkt. 50 at 10, whereas the accused products have "off centered notches." Dkt. 64 at 1. The accused products have a plainly dissimilar design. *See Egyptian Goddess*, 543 F.3d at 678.

Plaintiff's argument essentially rests on the contention that the "two notches in the upper rim" set Plaintiff's "design apart from all other glasses." Dkt. 72 at 11. In contending so, Plaintiff argues its design patents protect any glass with "two notches" in the upper rim. This argument holds no water. The Court decided in the claim construction order that the scope of the design patents, although limited,

8

protects the depicted ornamental aspects of the glass, and, at its heart, the centrally located notches. Dkt. 50 at 10. Unlike utility patents, the scope of a design patent is dictated by the drawings. *See In Re Freeman*, 23 App. D.C. 226, 228–29 (D.C. Cir. 1904) (explaining that, as a rule, the drawing views, themselves, are the best description of the scope of a design patent); *see also Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302–03 (Fed. Cir. 2010) (emphasizing the importance of construing the scope of a design patent based on the drawings rather than written descriptions). The functional elements are invalid. *See Ethicon Endo-Surgery*, 796 F.3d at 1328; 37 C.F.R. § 1.153(a). *Compare* 35 U.S.C. § 101 (utility patents) *with* 35 U.S.C. § 171 (design patents). These principles guided the Court's claim construction decision. Plaintiff is not entitled to a broader scope of protection than the USPTO granted through the '884 and '184 patents, which are constrained by the drawings as this Court interpreted them in the claim construction order. *See* Dkt. 50 at 10. We do not reach Defendant's invalidity contentions under a broader scope.

## CONCLUSION

Accordingly, Defendant's motion for summary judgment (Dkt. 62) is **GRANTED**. The Clerk is directed to enter final summary judgment in favor of Defendant and against Plaintiff, terminate any pending deadlines and motions, and close this case.

**DONE AND ORDERED** at Tampa, Florida, on January 21, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record